BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE MT. GOX BITCOIN EXCHANGE LITIGATION | MDL No. 2829 |

**DEFENDANT MIZUHO BANK LTD.'S OPPOSITION
TO MOTION OF PLAINTIFF ANTHONY MOTTO FOR
CONSOLIDATION AND TRANSFER PURSUANT TO 28 U.S.C. § 1407**

Defendant Mizuho Bank Ltd. ("Mizuho") respectfully submits this opposition to the motion of plaintiff Anthony Motto for consolidation and transfer pursuant to 28 U.S.C. § 1407 ("Section 1407") of two newly filed actions (one in the Western District of California and a second in the Eastern District of Pennsylvania) with a third well-advanced action in the Northern District of Illinois (the "Motion"). For the reasons explained below, the Panel should deny the Motion because consolidation would not be convenient to the parties and witnesses, and would not promote the just and efficient conduct of the pending actions that are the subject of the Motion.

**INTRODUCTION**

Motto's Motion seeks to centralize for pretrial proceedings two newly filed actions, in which defendant Mizuho has not even been served with process, with a third action that is four years old and in which discovery will be complete by the time the Panel hears the Motion. Though the three actions have factual elements in common, centralization, under the circumstances of this case, will not achieve either of the objectives of Section 1407 – to promote

the convenience of the parties and witnesses and to further the just and efficient conduct of the actions.

The Panel has often recognized that centralization is a solution of last resort, to be avoided if other means of achieving the convenience and efficiency goals of Section 1407 are available.  The Panel has also emphasized that a movant seeking centralization bears a particularly heavy burden to show the need for centralization where, as here, the procedural stages of the actions vary significantly, responding parties oppose centralization, the parties are represented by the same counsel in the various actions, other means of coordination are possible, and the number of actions involved is small.  Each of these factors weighs heavily against consolidation.

*First*, the procedurally advanced stage of the Illinois action as compared to the newly filed California and Pennsylvania actions strongly disfavors centralization.  In the Illinois case, fact discovery is already closed, the two remaining expert depositions are scheduled to be finished by the time this Court hears argument on the Motion, and a motion for class certification is currently pending.  By contrast, Mizuho has not even been served with process yet in the California and Pennsylvania cases.

*Second*, informal cooperation and coordination is a practical alternative to centralization under the circumstances present here.  The plaintiffs in the various actions are represented by the same counsel and Mizuho is represented by the same counsel in all of the actions.  Discovery is virtually complete in the Illinois action.  Until recently, each of the three plaintiffs was a named plaintiff in the Illinois action, and therefore participated actively in discovery in the Illinois actions:  each plaintiff produced documents, provided written discovery responses, and gave deposition testimony that can and should be used without the need for any duplication in the

California and Pennsylvania actions. Barring any new or unforeseen developments, Mizuho has no intention of seeking to duplicate any of the discovery that has already been completed in the Illinois action, and sees no reason why any of the plaintiffs would wish to do so either.

*Third*, the risk, if any, of inconsistent rulings in these cases is minimal. Motto's contention that centralization is needed to avoid inconsistent rulings fails to appreciate the factual and legal differences among the claims in the three actions. The Pennsylvania action, unlike the other two actions, seeks to pursue a single tortious interference with contract claim against Mizuho on behalf of a proposed class of individuals. That claim is not pursued in the other two actions, which assert fraudulent concealment claims on behalf of a different proposed class of individuals. In other words, both the cause of action and the proposed class in the Pennsylvania action are unique and different from those in the other two actions. The Pennsylvania action therefore presents no risks of inconsistent rulings. Moreover, even though the California and Illinois actions both assert a fraudulent concealment claim, there is no danger of inconsistent rulings because those claims must be resolved under the substantive state laws of California and Illinois, respectively. In circumstances such as these, the Panel has acknowledged that centralization is not appropriate.

In sum, centralization will serve little purpose here. Motto's Motion should be denied.

## PROCEDURAL AND FACTUAL BACKGROUND

**A.    Procedural History**

This litigation arose from the collapse in February 2014 of Mt. Gox, a bitcoin exchange based in Japan. Mizuho, a Japanese bank at which Mt. Gox held a deposit account, was first brought into this litigation in March 2014. *Greene v. Mizuho Bank, Ltd.*, Case No. 14 CV 01437 (N.D. Ill.), Doc. No. 37. At that time, the only named plaintiffs in the case were Gregory Greene, an Illinois resident, and Joseph Lack, a California resident. *Id*. Mizuho filed two

motions to dismiss. First, Mizuho filed a motion to dismiss for lack of personal jurisdiction. While that motion was still pending, Mizuho filed a second motion to dismiss for failure to state a claim.

In deciding Mizuho's first motion, the Illinois district court determined that it lacked personal jurisdiction over Mizuho for plaintiff Greene's claim, but denied Mizuho's motion on the condition that plaintiffs' counsel add a new Illinois-resident named plaintiff who deposited money into Mt. Gox's account at Mizuho. *Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855, 865 (N.D. Ill. 2016). As a result, Illinois resident Anthony Motto was added as a named plaintiff. *Greene*, Doc. No. 205.

Subsequently, on August 26, 2016, the Illinois district court decided Mizuho's second motion to dismiss for failure to state a claim and ruled that plaintiff Greene failed to state a claim, but otherwise denied Mizuho's motion. *Greene v. Mizuho Bank, Ltd.*, 206 F. Supp. 3d 1362 (N.D. Ill. 2016). In March 2017, while discovery was underway, Pennsylvania resident Gregory Pearce was added as an additional named plaintiff. *Greene*, Doc. No. 245. Discovery proceeded with (i) document productions and written discovery from Mizuho and each of the named plaintiffs, (ii) document productions from several non-parties, and (iii) depositions of Mizuho (a deposition pursuant to Rule 30(b)(6)), each of the named plaintiffs, one non-party, and three expert witnesses. The depositions of two additional expert witnesses are scheduled for February 26, 2018 and March 2, 2018, respectively.

Following the Supreme Court's June 19, 2017 personal jurisdiction ruling in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017), Mizuho filed a motion for reconsideration, in which it argued that under *Bristol-Myers*, the Illinois district court could no longer exercise personal jurisdiction over Mizuho for the claims of non-Illinois

residents Lack and Pearce. *Greene*, Doc. No. 282. By order dated December 11, 2017, the district court agreed and dismissed the claims of Lack and Pearce. *Greene*, Doc. No. 312.

      **B.**    **The Illinois Action**

As described above, the Illinois action is well advanced, with all fact and expert discovery completed, except for the depositions of two expert witnesses, which are scheduled to be completed by March 2, 2018. A motion for class certification was filed in mid-October 2017, and will be fully briefed and submitted on March 22, 2018. Both the depositions and class certification briefing will be completed at the time of oral argument before the Panel, which has been set for March 29, 2018.

The sole remaining named plaintiff in the Illinois action, Anthony Motto, asserts state law claims against Mizuho for fraudulent concealment and unjustment enrichment, although he is pursuing class certification only with respect to the fraudulent concealment claim. *See Greene*, Doc. No. 245 ¶¶ 122-150. By his own admission, Motto's claims are governed by the laws of his home state, Illinois. *See Greene*, Doc. No. 295 at 14-15. Motto purports to bring his claims individually and on behalf of a "deposit class," defined in Motto's motion for class certification as "[a]ll individuals who, while residing in the United States, wired fiat currency to Mt. Gox's account at Mizuho Bank between June 20, 2013, and February 24, 2014." *Greene*, Doc. No. 294 at 1.

      **C.**    **The California Action**

The California action was commenced by plaintiff Joseph Lack on January 24, 2018, following the Illinois court's December 11, 2017 dismissal of Lack's claims for lack of personal jurisdiction. Nothing has happened yet in the California action – in fact, Mizuho has not even been served with a summons and complaint.

Like Motto in the Illinois action, Lack asserts exclusively state law claims against Mizuho. Lack is suing Mizuho for fraudulent concealment and unjust enrichment (Lack Compl. ¶¶ 82-101), but, as his counsel admitted in moving for class certification in the Illinois action, Lack's claims are governed by the laws of his home state, California, not Illinois. *Greene*, Doc. No. 295 at 14-15. Lack also seeks to represent a "deposit subclass" comprised of United States individuals who "deposited money into their Mt. Gox account through Mizuho Bank after the date on which Mizuho Bank stopped processing withdrawals." Lack Compl. ¶ 56.

D.   **The Pennsylvania Action**

The Pennsylvania action was commenced by plaintiff Gregory Pearce on January 24, 2018, following the Illinois court's dismissal of Pearce's claim for lack of personal jurisdiction on December 11, 2017. As in the California action, nothing has happened yet in the Pennsylvania action because Mizuho has not been served with a summons and complaint.

Pearce, like Motto and Lack, asserts a claim against Mizuho that arises exclusively under the laws of his home state. *See Kernaghan v. BCI Commc'ns, Inc.*, 802 F. Supp. 2d 590 (E.D. Pa. 2011) (applying Pennsylvania law to tortious interference with contract claims). However, Pearce's claim differs from Motto's and Lack's claims. Pearce asserts a single claim for tortious interference with contract under Pennsylvania law. *See* Pearce Compl. ¶¶ 78-84. Moreover, unlike Motto and Lack, Pearce seeks to represent a "withdrawal subclass" comprised of individuals in the United States who "initiated a request to withdraw[ ] Fiat Currency from their Mt. Gox account after the date in [sic] which Mizuho Bank stopped processing withdrawals, and whose withdrawal request was not fulfilled." *Id.* ¶ 52.

**STANDARD OF REVIEW**

Section 1407 permits transfer and consolidation for pretrial proceedings of civil actions involving common questions of fact that are pending in different districts if the transfer and

consolidation "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. However, "'centralization under Section 1407 should be the last solution after considered review of all other options.'" *In re Six Flags Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 2018 WL 671913, at *1 (J.P.M.L. Feb. 1, 2018) (citation omitted).

For the reasons explained below, transfer and consolidation of the three pending district court actions that are the subject of the Motion will neither serve the convenience of the parties, nor further the just and efficient conduct of the actions. To the contrary, because the two new actions, on the one hand, and the four-year-old Illinois action, on the other, are at very different stages procedurally, and because the two new actions involve different proposed classes asserting different causes of action, consolidation is unlikely to provide any benefits that could not otherwise be achieved by informal coordination and cooperation among the parties.

## ARGUMENT

**I.  CENTRALIZATION WOULD NOT SERVE THE PURPOSES OF SECTION 1407 BECAUSE OF THE PROCEDURALLY ADVANCED STAGE OF THE ILLINOIS ACTION**

This Panel has repeatedly acknowledged that even when the actions at issue involve common issues, centralization is less compelling and often will not serve "the convenience of the parties and witnesses" or further the "just and efficient conduct of" the litigation when the actions involved are at procedurally different stages, parties to the actions oppose centralization, and the respective parties in the various actions are represented by the same counsel in all or most of the actions. *See, e.g., In re Boehringer Ingelheim Pharm., Inc., Fair Labor Standards*

*Act (FLSA) Litig.*, 763 F. Supp. 2d 1377, 1378 (J.P.M.L. 2011) (citing cases).[1] These considerations weigh strongly against centralization here.

*First*, the Illinois action is at a far more advanced procedural stage than the newly filed California and Pennsylvania actions, in which Mizuho has not yet been served with process. Indeed, fact discovery is already closed in the Illinois action, and expert discovery will be complete before the Panel hears argument on this Motion. Consequently, "[t]here are few pretrial proceedings remaining [in the Illinois action] that would benefit from centralized treatment." *In re Dental Supplies and Equip. Antitrust Litig.*, 2018 WL 671391 (J.P.M.L. Jan. 31, 2018) (denying motion to centralize thirty-six actions where the actions were at procedurally advanced stages).

*Second*, Mizuho strongly opposes centralization in the particular circumstances here, and strenuously disagrees with Motto's contention that centralization will "'eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts.'" Doc. No. 1-1 at 7 (citation omitted). As further explained below, duplication of discovery can be avoided without

---

[1] *See also In re Lloyds Bank PLC Int'l Mortg. Serv. Loan Litig.*, 997 F. Supp. 2d 1352, 1353 (J.P.M.L. 2014) (denying centralization and transfer notwithstanding common issues where the actions involved "widely varying procedural postures," the parties had the same counsel in both actions, and informal coordination seemed practicable); *In re Brandywine Commc'ns Techs., LLC*, 959 F. Supp. 2d 1377, 1379 (J.P.M.L. 2013) (determining that "the disparity of the procedural postures of these actions itself would complicate any centralized proceeding"); *In re Schneider Nat'l Carriers, Inc., Wage And Hour Emp't Practices Litig.*, 763 F. Supp. 2d 1373, 1374 (J.P.M.L. 2011) (denying transfer where transfer was opposed by all responding parties, one case was procedurally far more advanced than the other, the defendant was the same in both cases, and alternatives to transfer could minimize any possibilities of duplicative discovery and inconsistent pretrial rulings). Moreover, "where only a minimal number of actions are involved, the moving party generally bears a heavier burden of demonstrating the need for centralization." *In re Transocean Ltd. Sec. Litig.*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010); *In re Corvette Zo6 Mktg. and Sales Practices Litig.*, 2018 WL 671503, at *1 (J.P.M.L. 2018) (same); *In re Six Flags Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 2018 WL 671913, at *1 (J.P.M.L. Feb. 1, 2018) (same).

centralization because the extensive discovery completed in the Illinois action can and should be used in the California and Pennsylvania actions, and the risk of inconsistent or conflicting rulings is minimal.  Mizuho's opposition is an influential factor for the Panel to consider in weighing a motion for consolidation.  *See In re Skinnygirl Margarita Beverage Mktg. and Sales Practices Litig.*, 829 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) ("that all defendants uniformly oppose centralization is a factor which is quite influential where other factors do not strongly favor centralization").

*Finally*, there are only three actions pending.  Although Motto alludes to potential future tag-along actions that might be filed by new plaintiffs (Doc. 1-1 at 6), none are currently pending in any district court.  Even if new actions were filed by new plaintiffs in other district courts, those actions would also be far behind the Illinois action procedurally, and, like the California and Pennsylvania actions, would gain little benefit from consolidation with an action in which the pretrial phase is nearly over.

In short, notwithstanding the common factual issues in the three actions, Motto has failed to show that in these particular circumstances, transfer of the California and Pennsylvania actions for consolidation with the Illinois action will serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation.

## II.  ALTERNATIVES TO CENTRALIZATION ARE FEASIBLE AND WOULD ACHIEVE GREATER EFFICIENCIES ACROSS THE THREE CASES

The Panel has emphasized that "'centralization under Section 1407 should be the last solution after considered review of all other options.'"  *In re Six Flags*, 2018 WL 671913, at *1 (citation omitted).  In the circumstances presented here, informal cooperation among counsel and the parties is a workable alternative that is both practical and likely to promote the convenience of the parties and achieve efficiencies without the need for centralization.

As explained above, the plaintiffs in all three actions are represented by the same firm, and Mizuho is represented by the same counsel in all three as well.  Moreover, substantial discovery has been conducted and completed in the Illinois action, including document productions by and depositions of the named plaintiffs in the California and Pennsylvania actions, and Mizuho is prepared to stipulate to use all discovery from the Illinois action in both the California and Pennsylvania actions.  In circumstances such as these, the Panel has often declined to order centralization, and has recognized informal cooperation as a preferable alternative to centralization.  *See, e.g., In re Corvette Zo6*, 2018 WL 671503, at *1 (where the litigation involved only four actions with plaintiffs and defendants represented by common counsel in all actions, "[c]ooperation among the few involved courts and these two groups of counsel appears to be a workable alternative to centralization in these circumstances");  *In re Boehringer Ingelheim*, 763 F. Supp. 2d at 1378  (denying centralization of four procedurally dissimilar cases, three of which were brought by plaintiffs with common counsel, and where the defendant had common counsel in all four actions and opposed centralization, concluding that "alternatives to formal centralization, such as voluntary cooperation among the few involved counsel and courts, appear viable").  The Panel should do the same here.

### III. THE RISK OF INCONSISTENT RULINGS ACROSS THE ACTIONS IS MINIMAL AND DOES NOT WARRANT CENTRALIZATION

Without even acknowledging the foregoing circumstances that militate against centralization here, Motto argues that an MDL is necessary "to avoid conflicting and repetitive rulings."  Doc. 1-1 at 8.  Motto's assertion fails to recognize, however, that the claims asserted in the three pending actions have significant factual and legal differences, so that differing rulings on motions to dismiss, class certification and summary judgment in the different actions would not be in conflict with one another.

*First*, motions to dismiss the Pennsylvania and California actions pursuant to Fed. R. Civ. P. 12(b)(6) would not result in inconsistent rulings because the claims asserted against Mizuho in the two actions are completely different: the Pennsylvania action asserts tortious interference, whereas the California action asserts fraudulent concealment. Nor would such motions result in rulings inconsistent with the Illinois district court's ruling on Mizuho's Rule 12(b)(6) motion, because the Illinois court never ruled on the sufficiency of any plaintiff's tortious interference or fraudulent concealment claims under either Pennsylvania or California law. The Pennsylvania and California district courts, however, would be obliged to apply the substantive laws of the state in which the court sits when deciding Rule 12(b)(6) motions to dismiss Pearce's and Lack's claims. *See Kernaghan v. BCI Commc'ns, Inc.*, 802 F. Supp. 2d 590 (E.D. Penn. 2011) (applying Pennsylvania law to tortious interference with contract claims); *Marentes v. State Farm Mut. Auto. Ins. Co.*, 224 F. Supp. 3d 891, 904 (N.D. Cal. 2016) (applying California state law to fraudulent concealment claims while sitting in diversity).

At the time the Illinois court decided Mizuho's Rule 12(b)(6) motion, Pearce had not yet been added as a named plaintiff in the Illinois action, so the Illinois court never considered the sufficiency of his tortious interference claim under Pennsylvania law. Although Lack was a named plaintiff at the time, the Illinois district court applied Illinois law in ruling on Mizuho's 12(b)(6) motion, and did not separately consider the sufficiency of Lack's fraudulent concealment claim under California law. *See Greene*, 206 F. Supp. 3d at 1370.[2] Consequently, Rule 12(b)(6) motions in the Pennsylvania and California actions pose no risk of inconsistent rulings.

---

[2] Although the Illinois district court did not separately consider the sufficiency of Lack's claim under California law, it nonetheless concluded that "California law governs Lack's claims" for purposes of rejecting Mizuho's *forum non conveniens* argument. *Greene*, 206 F. Supp. 3d at 1383.

*Second*, the Pennsylvania action is unique in that it is the only one of the three actions in which the named plaintiff continues to pursue a tortious interference claim against Mizuho on behalf of a purported "withdrawal subclass." As defined in the various complaints, the proposed "withdrawal subclass" would include a distinct set of individuals meeting criteria entirely different from the criteria needed to qualify for participation in the proposed "deposit subclass" in the Illinois and California actions. As such, there is no risk of inconsistent class certification rulings with respect to the proposed "withdrawal subclass." *See In re Fresh Dairy Products Antitrust Litig.*, 856 F. Supp. 2d 1344, 1345 (2012) (denying Section 1407 motion where purported statewide classes did not overlap). Similarly, because the tortious interference claim is not asserted in the California action, and is no longer being pursued by Motto in the Illinois action, there is no risk of inconsistent summary judgment rulings with respect to that claim.

*Third*, despite the alleged overlap between the claims asserted against Mizuho by plaintiffs Motto and Lack on behalf of a proposed "deposit subclass" in the Illinois and California actions, centralization will not avoid any risk of inconsistent rulings in those actions because, as discussed above and as plaintiffs themselves conceded at various junctures during the progress of the Illinois action (most recently, in their class certification briefing (*see Greene*, Doc. No. 295 at 14-15)), the claims are brought exclusively under state law, with Motto's claims governed by Illinois law, and Lack's claims governed by California law. *See Marentes*, 224 F. Supp. 3d at 904; *Greene*, 206 F. Supp. 3d at 1383. The Panel has acknowledged in circumstances such as these, "centralization may not prevent either conflicting or multiple rulings, because plaintiffs bring their claims under the laws of different states." *In re Skinnygirl*, 829 F. Supp. 2d at 1381. The cases cited by Motto (Doc. 1-1 at 8-9) do not support a different conclusion. Although the Panel in those cases acknowledged the need to avoid inconsistent

12

pretrial rulings, those cases presented far more compelling grounds for centralization because either no party opposed centralization, the actions were at similar procedural stages, or a larger number of cases were pending – or because of a combination of those factors. *See, e.g., In re LLRice 601 Contamination Litig.*, 466 F. Supp. 2d 1351 (J.P.M.L. 2006) (no opposition to centralization, no mention of differing procedural stages, and thirteen pending actions); *In re Enron Sec. Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375 (J.P.M.L. 2002) (no opposition to centralization, no discussion of differing procedural stages, and fifty-four pending actions); *In re Tempromandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 844 F. Supp. 1553 (J.P.M.L. 1994) (173 pending actions and no discussion of differing procedural stages).

*Finally*, Motto's argument about the "very real possibility of inconsistent class-certification decisions" (Doc. 1-1 at 8) is highly misleading and plainly unfounded. He contends that the three actions overlap because the plaintiffs in each seek to represent a proposed "Mt. Gox class" of "[a]ll persons in the United States who had bitcoins or money stored with Mt. Gox on February 24, 2014." *Id.* But all the plaintiffs' claims on behalf of the "Mt. Gox class" are asserted only against defendant Mark Karpeles. *See* Motion, Ex. A (Doc. 1-4) ¶¶ 62-81; Motion, Ex. B (Doc. 1-5) ¶¶ 58-77; Motion, Ex. C (Doc. 1-6) ¶¶ 95-121. (The claims against Mizuho are asserted only on behalf of the proposed deposit and withdrawal subclasses.) Yet Karpeles is not actively participating in the litigation, and the plaintiffs are not actively litigating against him. In the Illinois case, for example, the plaintiffs have never sought discovery from Karpeles, a default judgment against him, or certification of the "Mt. Gox class" to pursue class claims against him. And Motto acknowledged in the Motion that "[b]ecause it is unknown when or if Mr. Karpeles will ever participate in any of these United States-based proceedings, this motion focuses solely on the claims against Mizuho Bank." Doc. 1-1 at 7. Having said that, and having chosen not to

13

seek certification of the "Mt. Gox class" in his class certification motion in the Illinois case, Motto cannot reasonably ask the Panel to grant this Motion based on the risk of inconsistent rulings on hypothetical motions to certify a "Mt. Gox class" in the future.

In the circumstances presented here, centralization will not serve to avoid conflicting rulings, and will not promote the just and efficient conduct of the underlying actions.

## CONCLUSION[3]

For all of the foregoing reasons, the Panel should deny Motto's Motion.

Dated: New York, New York
February 22, 2018

SHEARMAN & STERLING LLP

By: /s/Jerome S. Fortinsky
Jerome S. Fortinsky
Jeffrey J. Resetarits
599 Lexington Avenue
New York, New York 10022
212-848-4000
jfortinsky@shearman.com
jeffrey.resetarits@shearman.com

*Attorneys for Defendant Mizuho Bank Ltd.*

---

[3] Throughout its involvement in this litigation, Mizuho has maintained that the district court in Illinois does not have personal jurisdiction over it with respect to any plaintiff's claims. Mizuho continues to contest the Illinois court's jurisdiction over it, and expressly preserves the issue for appeal. Mizuho similarly reserves the right to contest jurisdiction in California and Pennsylvania. Nothing in this opposition should be construed to constitute a waiver of Mizuho's personal jurisdiction defense in any of the actions that are the subject of this Motion, or in any potential tag-along action that may be filed.

BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE MT. GOX BITCOIN EXCHANGE LITIGATION | MDL No. 2829 |

**PROOF OF SERVICE**

I, Jerome S. Fortinsky, hereby certify that on February 22, 2018, I caused to be served on the following counsel of record for plaintiffs Defendant Mizuho Bank Ltd.'s Opposition to Motion of Plaintiff Anthony Motto for Consolidation and Transfer Pursuant to 28 U.S.C. § 1407 and this Proof of Service by filing the same via the Court's ECF system:

Rafey S. Balabanian
rbalabanian@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9495

On February 22, 2018, I further caused Defendant Mizuho Bank Ltd.'s Opposition to Motion of Plaintiff Anthony Motto for Consolidation and Transfer Pursuant to 28 U.S.C. § 1407 and this Proof of Service to be transmitted to and served upon **Defendant Mark Karpeles** via email at magicaltux@gmail.com, which is the method of service approved in the *Greene v. MtGox, Inc.*, No. 1:14-cv-01437 (N.D. Ill.) litigation. Mr. Karpeles lives in Japan and our office presently knows of no way to physically mail or serve him with copies of any legal documents other than by means of the foregoing email address.

Dated:  New York, New York
        February 22, 2018

/s/  Jerome S. Fortinsky
Jerome S. Fortinsky